## **AFFIDAVIT**

I, Detective John Pickens, being first duly sworn, hereby depose and state as follows:

1. I make this Affidavit in support of an application for a search warrant to search a white in color iPhone, cellular telephone (**"Target Telephone"**) in a clear and gold case, as there is probable cause to believe the **Target Telephone** contains evidence of a crime, or will lead to evidence of a crime.

2. I am a Detective with the Kansas City, Missouri Police Department (KCMOPD) and have been employed by KCMOPD for 21 years. I have been assigned to the Narcotics and Vice Division for eight years, conducting and assisting in narcotics investigations. During my tenure with the Narcotics and Vice Division, I have been involved with numerous investigations in the importation and distribution of controlled substances. I have communicated extensively with other state and federal law enforcement personnel who specialize in drug investigations.

3. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

4. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this Affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a) and 846 have been committed, are being committed, and will

continue to be committed by Jesus **BANUELOS** ("**BANUELOS**"), Mirza ALIHODZIC ("ALIHODZIC"), Brandy Foster ("Foster") and Lloyd Hagan ("Hagan"). There is also probable cause to believe that the information sought will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses as well as known and unknown co-conspirators.

## PROBABLE CAUSE

6. In January of 2019, the KCMOPD, the Federal Bureau of Investigations (FBI), the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and Missouri State Highway Patrol (MHHP) began conducting a drug trafficking investigation targeting ALIHODZIC. The investigation to date has identified ALIHODZIC, who presently resides in Kansas City, Missouri, as the primary organizer of this drug trafficking organization. ALIHODZIC organizes and coordinates methamphetamine distribution throughout the Western District of Missouri and elsewhere. ALIHODZIC works with numerous identified and unidentified co-conspirators to facilitate methamphetamine distribution in Missouri and Kansas. During the investigation, detectives learned that **BANUELOS**, Foster and Hagan are associates of ALIHODZIC and assist in the distribution of methamphetamine, either directly and/or indirectly, for ALIHODZIC.

7. On April 23, 2019, a reliable Confidential Human Source (CHS) was working with members of the KCMOPD and FBI on a controlled purchase for a half pound of methamphetamine. The CHS was directed via phone/text by Foster to go to 1909 Lawn Avenue to purchase a half pound of methamphetamine. Upon arrival, Foster was observed in her vehicle with a male believed to be Hagan. Foster met with the CHS in front of the residence, took the pre-recorded buy money and returned to the vehicle with Hagan. A Hispanic male, later identified as **BANUELOS**,

arrived, driving a maroon Jeep bearing Missouri license plate ZC7-E2D. **BANUELOS** and Hagan entered the residence of 1909 Lawn Avenue without knocking. Moments later, Hagan exited the residence and responded to the vehicle with Foster. Foster directed the CHS to follow her and Hagan, where they stopped in the roadway at 20th and Lawn. Foster exited her vehicle and responded to the CHS, where she handed him/her a half pound of methamphetamine. The substance was later field-tested, using the Marquis Reagent System, which responded positive for the presence of methamphetamine. **BANUELOS** was later observed leaving the residence driving the maroon Jeep with a Hispanic female passenger.

8. On May 8, 2019, the CHS was working with members of the KCMOPD and FBI on a controlled purchase for methamphetamine. The CHS requested to purchase a half pound of methamphetamine from Foster. Foster advised the CHS via phone/text to meet her 1909 Lawn Avenue, and advised him/her to hurry because the source of methamphetamine was coming home from work to meet them. Surveillance was set at 1909 Lawn Avenue. Surveillance detectives observed a maroon Jeep bearing Missouri license plate ZC7-E2D arrive at 1909 Lawn Avenue, being driven by a Hispanic male, later identified as **BANUELOS**. Foster continued to communicate with the CHS via phone/text asking him/her to hurry to the location. Surveillance detectives observed **BANUELOS,** the driver and sole occupant of the Jeep, meet with a white male, believed to be Hagan, in front of the residence of 1909 Lawn Avenue. Both **BANUELOS** and Hagan then entered the front door of the residence. Several minutes after entering the residence, a white female arrived at 1909 Lawn Avenue in unknown white SUV and entered the residence. Shortly thereafter, all three subjects exited the residence. Hagan entered a black Pontiac Grand Prix, bearing Missouri license plate CU5 D2B, which was being driven by Foster. Foster immediately contacted the CHS to confirm that the CHS had his/her money in hand to pay for the

half pound of methamphetamine. The CHS advised he/she had the money and was directed via phone/text to meet Foster at her residence, 6644 Woodland. Surveillance detectives observed **BANEULOS** re-enter the maroon Jeep as the sole occupant and leave the area. **BANUELOS** was kept under surveillance to 5221 E 6th Street, Kansas City, Missouri, where he parked in front of the residence. Visual surveillance of **BANUELOS** was lost for a few moments while stopped in front of the residence. Moments later **BANUELOS** was observed driving away as the sole occupant of the maroon Jeep. Thereafter, **BANUELOS** was kept under surveillance to 4016 NE 52nd Terrace, Kansas City, Missouri, where he entered the residence. The CHS responded to 6644 Woodland, where I observed both Hagan and Foster exit the residence. Hagan remained on the front porch and Foster responded directly to the CHS, where she handed him/her a half pound of methamphetamine in exchange for pre-recorded buy money. A field-test of the purported methamphetamine using the Marquis Reagent System responded positive for the presence of methamphetamine.

9. On May 8, 2019, surveillance of the maroon Jeep and **BANUELOS** continued at 4016 NE 52nd Terrace. **BANUELOS** was observed exiting the residence with a male, later identified as Sanchez, Advino. **BANUELOS** entered the driver's seat of the Jeep and Advino was the front passenger. The Jeep was kept under surveillance and observed failing to signal for a lane change and failing to stop for a red traffic signal. Thereafter, uniformed KCMOPD officers conducted a traffic stop of the maroon Jeep. Once officers made contact with **BANUELOS,** they immediately detected the odor of marijuana. Officers observed small amounts of marijuana in plain view. **BANUELOS** gave officers consent to search the vehicle. Officers located a loaded, semi-automatic Glock pistol, along with 18 live rounds of ammunition hidden in the dashboard of the vehicle. **BANUELOS** was arrested for possession of a controlled substance as well as

possessing a firearm in combination with a controlled substance. During a search of **BANUELOS** incident to arrest, officers located a white iPhone cellular telephone in a clear and gold case.

10. Due to my training and experience, I believe **BANUELOS** is a narcotics distributor in the Kansas City metropolitan area. During two controlled methamphetamine purchases, **BANUELOS** is believed to have provided a pound of methamphetamine. **BANUELOS** is believed to having been in contact with Foster and/or Hagan via cellular phone. During both controlled narcotics purchases involving Foster, **BANUELOS** was observed arriving after notifications were made to the CHS via phone/text of where and when to respond. In my experience, communications between **BANUELOS**, Foster and/or Hagan would have occurred through cellular communication. They were not together in person prior to the narcotics arrangement/transaction and would not have known where and when to meet. When arrested after being kept under surveillance directly after a half pound methamphetamine purchase, **BANUELOS** was found to be in possession of a firearm, small amounts of marijuana and only one cellular phone. During an in-custody interview, **BANUELOS** was calm and answered questions and admitted to being in possession of the firearm for his protection. When questioned about being involved in other criminal activity and narcotics distribution, **BANUELOS** became very nervous, began sweating and his hands began to shake. **BANUELOS** refused consent to conduct a search of his cellular phone.

11. I know, through my training and experience, that it is common for narcotic traffickers to utilize "smart phones" and to password protect the contents of the phone to deter law enforcement from observing the contents of the phone.

12. I also know, through my training and experience, that drug traffickers commonly carry cellular phones to communicate with friends/family, customers, and source of supplies for

their narcotics; I also know that individuals who deal in illegal controlled substances commonly maintain addresses or telephone numbers in mobile telephones, utilizing the internal mobile phone electronic storage, which reflect names, addresses and/or telephone numbers for their associates, to include sources of supply, distributors, and customers, in their criminal organizations. In addition to continuing their illegal businesses, I know that these individuals utilize mobile telephone systems to maintain contact with their criminal associates. In addition, most mobile telephones on the market today have built in electronic digital cameras and video capabilities. I know that individuals who deal in illegal controlled substances take, or cause to be taken, photographs or videos of themselves, their associates, their properties, their illegal products, and the cash proceeds from these illegal transactions. These individuals usually maintain these photographs and videos in the internal electronic storage of the mobile telephone.

### ITEMS TO BE SEARCHED AND EVIDENCE TO BE SEIZED

13. This affidavit is in support of a search warrant for the search of the **Target Telephone** which is currently secured as evidence in the Western District of Missouri.

14. Electronic data contained within the phone, to include: call logs of incoming, outgoing, missed, saved or stored calls; saved directories of names, physical addresses and telephone/pager/fax numbers; email addresses as well as emails drafted, stored, sent and/or received; received, sent, stored and/or deleted messages in textual or voice; text, SMS, MMS and EMS messages received, sent, stored, drafted and/or deleted; audio, photographs and movie data that were device created or not, but received, stored, viewed, transmitted or deleted; memos in a textual or voice format, be they stored, deleted, sent, received and/or drafted; stored data/information to include, but not limited to, the device's owner and/or user's internet activity; stored calendar data; and stored, received, device-created, transmitted, and/or deleted GPS data.

## **AUTHORIZATION REQUEST**

15. Based on the foregoing, I believe there is probable cause to believe that the requested information will lead to evidence regarding the activities described above and that the **Target Telephone**, recovered from and utilized by **BANUELOS**, has been used in the distribution of controlled substances in the Western District of Missouri.

JOHN PICKENS
Detective
Kansas City, Missouri Police Dept.

Subscribed and sworn to by Affiant on July 16th , 2019,

HONORABLE SARAH W. HAYS
United States Magistrate Judge
Western District of Missouri